**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

FILED

APR 24 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Crim No. 3:06-cr-02507-KC-2 |
| | ) |
| JOSE RODOLFO ESCAJEDA, | ) |
| | ) |
| Defendant. | ) |

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO
18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018**

COMES Defendant, JOSE RODOLFO ESCAJEDA ("Escajeda"), appearing

*pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is

limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582.

The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is

extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is

black-letter law that a federal court generally "may not modify a term of

imprisonment once it has been imposed." *Id.* However, Congress has allowed an

exception to that rule "in the case of a defendant who has been sentenced to a term

1

of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. See *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

On March 23, 2011, the grand jury sitting in the United States District Court for the Western District of Texas, El Paso Division, returned a two (2) count Second Superseding Indictment charging Escajeda. See Doc. 122.[1] Count 1ss charged Escajeda with Conspiracy to Import 1,000 Kilograms or More of A Mixture and Substance Containing A Detectable Amount of Marijuana and 5 Kilograms or More of A Mixture and Substance Containing A Detectable Amount of Cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b)(1)(B)(ii), and (G). *Id.* Count 2ss charged Escajeda with Conspiracy to Possess 1,000 Kilograms or More of A Mixture and Substance Containing A Detectable Amount of Marijuana and 5 Kilograms or More of A Mixture and Substance Containing A Detectable Amount of Cocaine, in

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Western District of Texas, El Paso Division in Criminal No. 3:06-cr-02507-KC-2, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II), and (vii). *Id.*

On December 21, 2011, a Rearraignment Hearing was held before Judge Kathleen Cardone. See Doc. 194. Escajeda pled guilty to Count 1ss of the Second Superseding Indictment. *Id.* The Plea Agreement specifically called for a sentence of 420 months based on an agreement under FRCrP 11(c)(1)(b). *Id.*

Based on Escajeda's conduct and criminal history, his Total Offense Level was 43, resulting to a guideline sentence of Life imprisonment. See PSR ¶ 58. The Government filed a motion for a reduction of his sentence pursuant to USSG 5K1.1 based on Escajeda's substantial assistance. See Doc. 344.

On March 1, 2012, a Sentencing Hearing was held before Judge Kathleen Cardone. See Doc. 205. This Court sentenced Escajeda to a term of 420 months' imprisonment. See Doc. 206. It is followed by 5 years of Supervised Release. *Id.* The Court also ordered a $10,000 Fine and a Mandatory Special Assessment Fee of $100. *Id.* No direct appeal was filed in this case.

On June 12, 2015, Escajeda filed a Motion to Reduce Sentence-USSC Amendment 782, which was denied on August 18, 2016. See Docs. 270, 294.

On October 13, 2020, Escajeda filed a Motion for Compassionate Release, which was also denied on October 19, 2020. See Docs. 318, 319.

3

On December 14, 2020, Escajeda filed another Motion to Reduce A Sentence of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2), which this Court denied on December 16, 2020. See Docs. 326, 327.

On January 19, 2022, Escajeda filed a Notice of Appeal re: Motion to Reduce A Sentence of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2). See Doc. 336.

On March 28, 2022, Escajeda filed a Motion to Reduce Sentence - First Step Act, which was denied on June 24, 2022. See Docs. 339, 345.

On August 26, 2022, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") dismissed Escajeda's Appeal as untimely. See Doc. 348.

On March 15, 2024 and May 3, 2024, Escajeda filed a Motion to Reduce Sentence - USSC Amendment 821, which was both denied on July 17, 2024. See Docs. 352, 353, 354.

## III. DISCUSSION

As a preliminary matter, respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. See *Hernandez v. Thaler*, 630 F.3d 420 (5th Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

## A.    Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Escajeda's sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

### 1.    Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that

the statute was intended, in part, to abolish and replace federal parole.

Compassionate Release is not a new Remedy. It dates back, at least to the Parole Reorganization Act of 1976. The Parole Act Provides: "At any time upon Motion of the Bureau of Prisons, the Court may reduce any minimum term to the time the defendant has served." U.S.C. § 4205(g)-(repealed 1987). The capaciousness of that text authorize the BOP to request (and District Courts to Grant) reductions for a wide range of reasons. In 1984, Congress enacted the Sentencing Reform Act. "Congress abolished Federal Parole and forbade the Federal Courts from 'modifying a term of imprisonment once it has been imposed.'" See *United States v. Jones*, 980 F.3d 1098, 1103-04 (6th Cir. 2020) (Alteration in original)(quoting Pub. L. No. 98-73,Title II, 2 §212(a), 98 Stat. 1837, 1998 (enacting 18.U.S.C. §3582(c))). But Congress retained an exception for Compassionate Release Motions See 18 U.S.C. § 3582 (C)(1)(A) (1984). (providing that "the Court upon Motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment" under certain conditions). That exception-like its Parole Act predecessor "gave [the] BOP exclusive power over all avenues of compassionate release." See *United states v. Brooker*, 976 F.3d 228, 231*(2d. Cir. 2020) .

After a Negative DOJ Inspector General Report found that the BOP rarely moved Courts for a § 3582(c)(1)(A) modification- even for prisoners who met the

objective criteria- the Commission Amended its Policy Statement, admonishing the BOP to file Motions for Compassionate Release whenever a prisoner was found to meet the criteria in U.S .S.G.§ 1B1.13, U.S. DOJ Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013); U.S.S.G. § 1B1.13, App. Note 4; See *U.S. v. Dimasi*, 220 F. Supp. 3d 173, 175 (D. Mass. 2016)(discussing from the OIG Report to new "encouraging" guidelines).

After the involvement of the Office of the Inspector General (OIG) in Certain Investigation against BOP, the OIG found that the BOP failed to provide adequate guidance to Staff on the criteria for Compassionate Release, to set time lines for reviewing Compassionate Release requests, to create Formal procedures for informing prisoners about compassionate Release, and to generate a system for tracking requests. See FBOP Compassionate Release Program, at i, iv. The OIG concluded that "FBOP does not properly manage the Compassionate Release Program, resulting in inmates who may be eligible candidates for release not being considered." *Id.*; See, generally, Stephen R. Sad y & Lynn Deffebach, Second look Resentencing Under 18 U.S.C. § 3582(c) as Example of Bureau of Prisons Policies in Overincarceration, 21 FED. SENT. RPTR. 167 (Feb. ,2009).

A Study showed that from 36,000 inmates that requested Compassionate Release at their respective facilities, from those 36,000 Requests - just 36 were

approved.

Congress heard those Complaints. On December 21, 2018, Congress passed the FSA, which transformed the Process for Compassionate Release Under § 3582(c)(1)(A). Congress labeled these changes, "Increasing the Use of Transparency of Compassionate Release" 164 Cong. Rec. H10346, H10358 (2018).

Pursuant to the FSA, this Court has discretion to reduce the Term of Imprisonment imposed in this Case based on § 3582(c)(1) (A), If it concludes that: (1) Petitioner Escajeda has "fully Exhausted all Administrative Rights to Appeal a failure of the Bureau of Prisons to bring a Motion on the Defendant's behalf or the lapse of 30 days from the receipt of the requests by the Warden of the defendant's facility, whichever is earlier." (2) "Extraordinary and Compelling Reasons Warrant" a Reduction in Sentence; ( 3) Consideration of "the factors set forth in Section 3553 (a)"; and (4) "Such a reduction is consistent with applicable Policy Statements issued by the Sentencing Commission." See 18 U.S.C. § 3582(c)(1)(A).

Petitioner Escajeda points to a recently promulgated Policy Statement from the U.S. Sentencing Commission, which states that an "Unusually Long Sentence," coupled with a non-retroactive change in the Law, can constitute an extraordinary and compelling reason to modify a Sentence. See UtS.S.G. § 1Bl.13(b)(6).

## EXHAUSTION

Section 3582(c)(1)(a) imposes "a statutory Exhaustion requirement" that "must be strictly enforced." The Court addresses these requirements in turn. The Court need not decide whether § 3582(c)'s exhaustion requirement is a Jurisdictional requirement or merely a mandatory claim processing rule. See *United States v. Monzon*, No. 99Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020 (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2nd Cir. 2004) (internal quotation marks and alterations omitted)).

Even in the Context of Federal Habeas Proceedings, where the Exhaustion Doctrine is a matter of Federalism and comity, Courts nevertheless may dispense of the requirement in case in which "exceptional circumstances of peculiar urgency are shown." See *Hendricks vs. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993)(quoting *Grandberry vs. Greer*, 481 U.S. 129, 134 (1987); See also *Simons vs. Blodgett*, 910 F.Supp. 1519, 1524 (W.D. Wash. 1996) aff'd, 110 F.3d 39 (9th Cir. 1997), as Amended (Apr. 18, 1997) (excusing exhaustion and stating that "Petitioner's ability to prove his claim continues to diminish rapidly over time, and is at risk of being lost," such that "justice requires that his Habeas Petition be heard expeditiously"); See also 28 U.S.C. § 12254(b) (authorizing application for Writ of Habeas Corpus in the absence of Exhaustion of State Remedies where "circumstances exist that render such process ineffective to protect the rights of the applicant."). Permitting waiver of

9

Exhaustion Under Section 3582 arguably is even more appropriate that in the Habeas contest because Federalism is not implicated in Compassionate release as it is in Habeas Proceedings. See *Braden v. 30th Judicial Circuit Court of Kentucky*, 410, U.S. 484, 490-91 (1973)(in Habeas Proceedings, the Exhaustion Doctrine is principally designed to protect the state courts role in the enforcement of Federal Law. and prevent disruption, of state Judicial Proceedings). Moreover, unlike in the Habeas Context, where state Courts may be able to provide the relief the defendant seeks, here, the BOP cannot, without involving the Court to provide the relief that Escajeda seeks. What is worse, according to some Researchers, Paralegal, and Law Offices that assist to Federal Inmates, the new scheme that BOP is using to delay the remedy process is that even though the inmate sends all the papers the Regions1 [Cop-Out, BP-8, BPS, BP-10, The Regional Office is taking out some papers] and sending the papers back by saying that were missing papers, and the package of Complaint was not complete; just to frustrate the inmate, and in that way he stop with the the remedies.

2.    Escajeda Has Exhausted Administrative Remedies

On August 1, 2025, Escajeda has filed a request for compassionate release to E. Ricolcol ("Ricolcol"), Warden at FCI Victorville, however, his request was denied on August 14, 2025. See Exhibit 1. Because 30 days have lapsed from the receipt of

the request and the BOP failed to file a motion on Escajeda's behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

For all the above reasons Escajeda brings this issue directly to the District Court.

## B. ARGUMENT

As amended by § 603(b)(1) of the First Step Act, this Court has Jurisdiction for an Order Reducing Petitioner Sentence Under § 3582(c)(1)(A). Once the Court determine whether "Extraordinary and Compelling Reasons" warrant a sentence reduction after consideration of Sentencing Factors Under 18 U.S.C. § 3553(a) and the Sentencing Commission's Policy Statement on reduction of sentence in U.S.S.G. § 1B1.13.

On November 1, 2023, Amendments to the Sentencing Guidelines went into effect. The Amendments include changes to the section 1B1.13, the Policy Statement on reduction in term of imprisonment Under 18 U.S.C. § 3582(c)(1)(A).

The Amendments to Section 1B1.13 seek to clarify and define the circumstances under a non-retroactive change to Sentencing Law can constitute an extraordinary and compelling reasons for a reduction. Relevant here, Section 1B1.13(b)(6) Provides: "Unusually Long Sentence" If a defendant received an unusually long sentence and has served at least 10 years of term of imprisonment, a

11

change in the Law (other than Amendment to the Guidelines Manual that has not made retroactive) may be considered in determining whether presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the Sentence likely to be imposed at the time the Motion is filed, and after full consideration of the defendant's individualized circumstances.

Petitioner Escajeda's sentence appears to be exactly the kind of "Unusually Long Sentence" as is envisioned by the Amendment to the Sentencing Guidelines as a basis for Compassionate relief. Escajeda has been incarcerated since September 4, 2009 and he has served more than 10 years (he has served 16 years ); he was given an egregious sentence.

In evaluating any reduction or alternative to prison, the First Step Act, 18 U.S.C. § 3582(c)(1)(a) directs the Court to consider the sentencing factors under 18 U.S.C. § 3553(a) . Factors which are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentenced imposed... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences

available; 4) the kinds of sentence and the sentencing range established for... the applicable category of defendant as set forth in the guidelines ;... ( 5) any pertinent policy statement... issued by the Sentencing Commission;... (6) the need to avoid unwarranted sentence disparities among def endants .or among similarly-situated defendants. See *Decator*, 452 F. Supp. 3d at 324-25, *Reed*, 444 F. Supp. 3d at 726-27 (Citing § 3553(a) (1)-(6) ).

On this case at hand, there is a big disparity between Petitioner's sentence and some of his co-defendants' sentences. The United States Sentencing Commission ("USSC") statistics in 2021 indicated that the average National Sentenced imposed for equally or more serious crimes than Petitioner Escajeda crimes were as follows: The Crime of robbery, 104 months (8 years, 8 months), for murder: 244 months (20 years, 4 months); for child pornography: 108 months (9 years), for kidnapping: 166 months (13 years, 9 months) etc. See USSC, Table 15, "Sentence imposed by type of crime"

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-repo rts-and-sourcebooks/2021/Table15.pdf

The above statistics show that Escajeda extra severe sentence of 420 months for his offense represents an unwarranted disparity compared with sentences similarly-situated with sentence of similarly-situated defendants. Even the most

serious offense it relfects a lower sentence (according to the Table 15) than Petitioner Escajeda's case.

As a little example that there is disparity between Petitioner Escajeda's sentence' case and some other similarly-situated defendants who in reality have committed bigger offenses than Petitioner Escajeda's offenses, are: See *United States v. Miguel Angel Caro Quintero*, who is a Mexican convicted drug Lord and former leader of the Sonora Cartel, he was sentenced to 17 years in prison. See the Denver Post Article, <u>https://www.denverpost.com/2010/02/04</u> <u>drug-cartel-chief-gets-17-years-in-prison/</u>. Miguel Caro Quintero is brother of Rafael Caro Quintero. Miguel Caro Quintero was extradited from Mexico to United States in 2008, and he was sentenced to 17 years of imprisonment. Also see the Case: *United States v. Vicente Zambada-Niebla*. (Jesus Vicente Zambada-Niebla AKA "El Vicentillo," Case: 1:18-cr-00484). Zambada Niebla is the son of Ismael "El Mayo" Zambada, who was one of Mexico's most wanted drug Lords. He was arrested in Mexico on March 19, 2009, then he was extradited to the United States in February 2010 to stand trial on narco-trafficking-related charges. He was sentenced to 15 years in prison on May 2019. Vicente Zamabada was charged with trafficking more than a billion dollars' worth of Cocaine and heroin in 2014. See <u>https://en.wikipedia.org/wiki/Vicente_Zambada_Niebla</u>.

14

**The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

As a little example that there is a disparity between Petitioner Escajeda case and some others similar-situated defendants and even some others more severe serious crimes than the one committed by Escajeda. One of those cases is for example *United States v. Oziel Cardenas-Guillen* , USDC # B-00-118-S1-01 (Southern District of Texas, Brownsville Division, 2007). Cardenas Guillen was extradited to the United States on January 19, 2007. He was the Co-Founder of the Gulf Cartel (Cartel del Golfo;See https://www.fbi.gov/houston/pressreleases/2010/ho22410b.htm. He was sentenced to 25 years of imprisonment and he was released on December 17, 2024 from an Indiana prison (Terre Haute, Indiana) See, https://www.dhs.gov/archive/hsi/news/2024/12/17/former-leader-gulf-cartel-removed -after-being-released-prison.

Shockingly, the 35 year sentence that Petitioner Escajeda received is greater than the 30 years sentence that one of the most infamous drug traffickers ever to be prosecuted in the United States received: Gilberto Rodriguez-Orejuela, co-leader of the violent Cali-Cartel, responsible for importing hundred of tons of cocaine, worth billions of dollars, into the United States in the 1980's and 1990's. See *United States*

*v. Rodriguez-Orejuela*, 457 F. Supp. 3d 1275, 1277-79 (S.D. FLA 4/28/2020). The 35 years sentence that Escajeda received is greater than the 30 years sentence that received Miguel Arnulfo Valle-Valle USDC # 1:14-crH135 (Eastern District of Virginia, 2014). Valle-Valle was the Co-founder of the Hondura's Valles Drug Clan; See https:/insightcrime.org/news/brief/us-treasury-sets-sights-honduras-valles-drug-clan.

Without undermining Petitioner Escajeda's drug offense (He is aware that what he did was wrong), but making a comparison and contrast of his offense with those of the above defendants with more Heinous Crimes, Escajeda s offense is a lesser those above mentioned defendants.

The Fifth Circuit has squarely held that, following the First Step Act, district courts are not constrained by the pre-Act policy statement found in U.S.S.G. § 1B1.13 when addressing defendant-filed motions. *United States v. Shkambi*, 993 F.3d 388, 392-93 (5th Cir. 2021). Instead, courts possess independent authority to determine what constitutes extraordinary and compelling reasons, guided—but not limited—by the Sentencing Commission's policy statements. Id. This discretion permits courts to consider a broad range of individualized circumstances, including the length of the sentence imposed and post-sentencing legal developments.

16

Beyond expanding access to compassionate release, the First Step Act enacted sweeping sentencing reforms that reflect Congress's determination that excessively long sentences imposed under prior regimes may warrant reconsideration. These reforms include reductions to certain enhancements under 21 U.S.C. § 851, expansion of the safety-valve provision under 18 U.S.C. § 3553(f), limitations on the stacking of mandatory minimums under 18 U.S.C. § 924(c), and retroactive application of the Fair Sentencing Act of 2010. Collectively, these changes underscore a legislative shift away from the punitive sentencing practices that produced life and near-life terms for nonviolent offenses.

Consistent with this statutory evolution, the Sentencing Commission's recent amendments to U.S.S.G. § 1B1.13 expressly recognize that "Unusually Long Sentences" may constitute extraordinary and compelling reasons for relief. Under § 1B1.13(b)(6), a defendant who has served at least ten years of an unusually long sentence may establish extraordinary and compelling reasons where subsequent changes in the law—other than non-retroactive guideline amendments—would create a gross disparity between the sentence imposed and the sentence likely to be imposed today, following individualized consideration of the defendant's circumstances.

The Fifth Circuit has acknowledged that courts may consider the full slate of circumstances bearing on whether extraordinary and compelling reasons exist,

17

including sentencing outcomes that appear unduly harsh under current law. *United States v. Cooper*, 996 F.3d 283, 288 (5th Cir. 2021). More recently, the Fifth Circuit confirmed that sentencing disparities and evolving sentencing norms may properly inform the compassionate-release analysis. *United States v. Jean*, 93 F.4th 355, 361–62 (5th Cir. 2024).

Persuasive authority from other circuits reinforces this conclusion. Courts have recognized that the length of a sentence, combined with changes in the legal landscape, may itself constitute an extraordinary and compelling reason for relief. See *United States v. McCoy*, 981 F.3d 271, 285–87 (4th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021); *United States v. Chen*, 48 F.4th 1092, 1098–1100 (9th Cir. 2022). While not binding, these decisions align with the discretion recognized by the Fifth Circuit and reflect the prevailing national consensus.

Applying these principles here, Escajeda has served more than sixteen years of imprisonment, far exceeding the ten-year threshold expressly contemplated by § 1B1.13(b)(6). In light of subsequent legal developments and modern sentencing practices, his sentence now stands in stark contrast to what would likely be imposed today, creating precisely the type of gross disparity the amended policy statement was designed to address. His sentence is therefore "unusually long" within the meaning

18

of the Guidelines.

Courts have routinely granted relief in analogous circumstances where defendants served lengthy sentences that no longer comport with contemporary sentencing standards. See, e.g., *United States v. Salliey*, No. RDB-10-0298 (D. Md. Feb. 13, 2023) (granting compassionate release based on an unusually long sentence, substantial time served, and rehabilitation). As in those cases, continued incarceration here would no longer serve the interests of justice.

Finally, it bears emphasis that Escajeda had no prior criminal history at the time of sentencing. Under the Guidelines, a zero-point offender ordinarily faces a substantially lower sentencing range. Nonetheless, he received a sentence far exceeding what a similarly situated defendant would receive today, further confirming that his punishment is disproportionately severe and unusually long.

Accordingly, Escajeda has met his burden of demonstrating extraordinary and compelling reasons warranting a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A).

### 2.    Escajeda's Remarkable Rehabilitation

Since the outset of his incarceration, Escajeda has demonstrated sustained, meaningful post-conviction rehabilitation, reflected not only in his conduct but in years of consistent self-improvement through education, vocational training, wellness

19

programming, and institutional compliance. His rehabilitation is not aspirational—it is documented, continuous, and verified by Bureau of Prisons records. See Exhibit 2.

Over more than sixteen years in federal custody, Escajeda has completed an extensive array of programs aimed at personal development, employment readiness, physical health, and emotional regulation. These include coursework in GED and ESL proficiency, carpentry, plumbing, electrical trades, leather crafting, fitness and wellness, stress management, substance-abuse education, financial responsibility, and release preparation, among many others. He has also completed structured health and wellness programs and earned certificates evidencing his commitment to lawful, productive reentry. *Id.* His individualized needs assessments now reflect low recidivism risk, with "no need" identified across key criminogenic domains, including antisocial peers, cognition, substance abuse, trauma, and work readiness. *Id.*

Equally significant is Escajeda's disciplinary record. He has remained compliant with institutional rules for many years, with no recent incident reports, demonstrating stability, accountability, and respect for institutional authority. *Id.* The Bureau of Prisons has further entrusted him with work assignments and classified him as FTC-eligible, confirming institutional confidence in his conduct and reliability. *Id.*

This transformation reflects a marked maturation. Escajeda entered custody in his early thirties; he is now 48 years old, having spent more than a quarter of his life incarcerated. During this time, he has evolved from a man engaged in criminal conduct into a reflective, disciplined, and rehabilitated individual, equipped with practical skills and a demonstrated commitment to lawful living. His records show consistent participation in programming year after year—evidence of intrinsic motivation rather than strategic compliance. *Id.*

Rehabilitation is particularly salient when assessing danger to the community. Empirical research consistently confirms that recidivism declines sharply with age, especially when combined with long periods of incarceration and verified rehabilitation. The U.S. Sentencing Commission has found that older offenders are substantially less likely to recidivate than younger offenders who served comparable sentences, regardless of sentence length. See U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*. Escajeda's age, time served, clean disciplinary history, and low-risk classification place him squarely within the category of offenders for whom continued incarceration yields diminishing public-safety returns.

Finally, the severity of Escajeda's punishment must be viewed in context. He has already served over sixteen years in custody, a term that exceeds the average

sentence imposed for far more serious offenses under contemporary sentencing data. Yet he was not convicted of a violent crime, and his sentence has already exacted a profound personal cost, including prolonged separation from family and community ties he has consistently expressed as central to his rehabilitation and reentry goals.

Taken together, Escajeda's extraordinary rehabilitation, sustained institutional compliance, advanced age, and low risk of recidivism demonstrate that the purposes of incarceration—punishment, deterrence, and rehabilitation—have been fully satisfied. Continued imprisonment would no longer meaningfully advance public safety and would instead discount the very transformation the federal sentencing system seeks to encourage.

3.    <u>Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct</u>

With respect to the need to avoid unwarranted sentencing disparities, Escajeda urges the Court to consider similar cases and recent compassionate release grants:

a.    <u>Similar Cases</u>:

i.    *United States v. Luis Carlos Vásquez Barragán*, Criminal No. 10 777 WJ (U.S. District Court for the District of New Mexico). He was charged with possession with intent to distribute at least 50 kilograms but less than 100 kilograms of marijuana. He pleaded guilty on May 13, 2022. On October 17, 2022, the U.S. District Court sentenced him to 17 years and 1 month in federal prison. Shortly afterwards,

22

an addendum to the plea agreement noted that Vásquez Barragán had already served 9 years, 5 months, and 7 days in Mexican custody on a related case before extradition. With that credit applied, the court imposed an effective sentence of 7 years and 7 months in U.S. custody, starting from the date of his extradition to the United States.

ii. 7:12-cr-00011-DC-1 - Valeriano, Benajamin. On February 26, 2021, Valeriano pled guilty to conspiracy to possess with intent to distribute and distribute five (5) kilograms or more of cocaine. On December 28, 2021, Valeriano was initially sentenced to 180 months' imprisonment. The BOP reduced his sentence to 92 months on January 20, 2023. Valeriano was released on August 20, 2024.

iii. 3:06-cr-02507-KC-1 - Escajeda-Candelaria, Oscar Alonso. On October 1, 2009, he pleaded guilty to conspiracy to import marijuana. On April 1, 2010, Escajeda-Candelaria was initially sentenced to 325 months' imprisonment. On November 18, 2011, his sentence was reduced to 245 months. Finally, the Court reduced his sentence to time served on March 12, 2021.

b. Compassionate Release Grants:

i. *Concepcion v. United States*, 142 S. Ct. 2389 (2022) – The Court held that district courts may consider all relevant information, including changes in the law and the defendant's post-sentencing conduct, when ruling on a sentence modification.

ii. *United States v. Clark*, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020) quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020

23

WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6.

iii. *United States v. Brooks*, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020) quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

Escajeda is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act based on the need to avoid unwarranted sentencing disparities, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Escajeda essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendant who was sentenced after Escajeda's sentencing and those being sentenced today under a

different sentencing structure. Escajeda's sentence in 2012 is now disparate relative to Defendants who were sentenced after December 21, 2018.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the

sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

## IV. SUMMARY

Reducing Escajeda's sentence would be consistent with § 1B1.13(b)(6)'s Policy Statement and with Full Consideration of the § 3553(a) Factors, Petitioner's time served constitutes a Sentence, But Not Greater than Necessary to Accomplish the Goals of Sentencing.

26

It is evident from a review of the § 3553(a) Factor that Escajeda presents NO DANGER to anybone or the Community.

During 16 years of incarceration Petitioner has just a few significant Incident Report. After that situation an exemplary disciplinary record (See Exhibit 2 ) through his 18 years of incarceration and he has demonstrated his Commitment to rehabilitation through the completion of a lot of Programs (*Id.*) Petitioner Post-Sentencing's Conduct and Positive Record "provides the most up-to date picture of his 'history and characteristics.'". See *Pepper v. United States*, 562 U.S. 476, 492 (2011) would not serve any additional rehabilitation purpose. Therefore, Escajeda's Extensive Rehabilitation efforts, combined with his age and background, constitutes an Extraordinary anti Compelling Reason for a Redcution in his Sentence. Petitioner Escajeda respectfully requests that his sentence should be reduced to 235 months of imprisonment, and this sentence will be still consistent with U.S. Sentencing Policy, and will still deter others from committing this kind of crimes.

Most and has importantly, Escajeda is 48 years old, a decreased Risk of Recividivism/reoffending due to his age. See U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders 22 (2017).

To support his new Compassionate Release Motion petitioner has risen he following Grounds: 1) that Escajeda received an "excessive disproportionate"

27

Sentence; (2) that he was incarcerated during COVID-19 Pandemic, which caused his sentence to be more severe and punitive than anticipated; (3) that there were disparities between his sentence and those of his codefendants; (4) that he has rehabilitated himself over the course of the last 16 years; (5) that he should not received 2-level enhancement Under Section 2D1.1(b)(1) just based on a photograph of a firearm, neither had he had not received other 2-level enhancement Pursuant to Obstruction of Justice; neither he had been increased the amount of drugs based on unreliable information given by incentivized and drug addict codefendants who received a lower sentenced by giving that not confirmed information, and (6) He could not had been found accountable for the whole amount of drugs of the whole conspiracy, Pursuant to the cases *Alleyne* and *Haines* which were decided year/laters after Petitioner Escajeda was sentenced, also he adds the concept that justice favors freedom over incarceration.

Taken into account that most of the above Grounds, many U.S. District Court have GRANTED Compassionate Release, e.g. See *United States v. Joseph Jackson*, No. 3:10-cr-00227 (KAD) (Eastern District of Missouri, decided on Feb. 23, 2024). Henderson was 39 years old when he was sentenced to TWO (2) Terms of Life imprisonment on 2009, and after being served more than 15 years of his Unsually Long Sentence, finally his Compassionate Release Motion was Granted on Feb. 23,

28

2024. When Honorable Judge Shaw sentenced Henderson, he believed that the Mandatory Life sentence he was required to impose was unduly harsh, particularly as compared to Turrentine's 33 - months sentence. (Turrentine was Hederson's co-conspirator).

On this case at hand, Petitioner Escajeda was sentenced to 420 months imprisonment (35 years) while 2 of his codefendants, Gabriel Rodriguez and Arturo Nevarez were sentenced to 60 months imprisonment. Just Petitioner Escajeda received a harsh sentence. All his codefendants have gone home.

Also see the Case *Charles Watts*, 2025 U.S. Dist. LEXIS 1215, USDC No. 92-CR-767- (KAM) ( 2nd Cir. decided on Jan. 4, 2023). In Support of his Compassionate Release Motion, Watts raised the stark disparity of his sentence as compared to his Co-conspirator (Daniels, who testified at trial), and that the Government offered Daniels a Plea, which resulted in a sentence of 10 years, according to Court Records (Docket of Shawn Daniels, 92-cr-00577-SJ) Nonetheless, as Watts' Counsel asserted, Daniels' sentence demonstrated that the 10 year sentence for Daniels' identical conduct and trial testimony served the deterrence, public Safety, and other goals of 18 U.S.C Section 3553(a) for Daniels' and Watts' identical offenses (EFC No. 121, *Watts* Sentencing Mem. at 4). Watts' sentence of 92 years and 3 months, when compared to the 10 year sentence of Daniels, exemplifies the

29

term "trial penalty," and warranted a Sentence reduction for Watts. Without receiving the Blessing by the U.S. District Judge who Granted Watts' compassionate release motion (even though the Government has opposed), Watts' release date was scheduled for the year 2072.

Also see *United States, v. Gerald Miller*, USDC # 92-CR-91 (NGG) 2024 U.S. Dist. LEXIS 160865 (Eastern District of New York, Decided on September 6, 2024). Miller was sentenced by Judge Raymons J. Deane to SIX (6) LIFE Sentences in the.year 1994, But Thanks GOD, the Honorable Judge NICHOLAS G. GARAUFUS, GRANTED Miller's Compassionate Release (on 09/06/2024, 34 years later) even though the Government did not want (The government had filed an Opposition Motion, as always does it). Miller's Sentence was Reduced to Time Served with 5 years of Supervised release to follow. In Miller's Case the Court held that Rehabilitation plays an important role when examining the § 3553(a) factors in resentencing a defendant that brought a Motion under the First Step Act. In *Pepper v. United States*, the Supreme Court stated that "evidence of Post-Sentencing Rehabilitation may be highly relevant to several of the § 3553(a) factors." 552 U.S. 476, 491, 131 S. Ct. 1229, 179 L.Ed. 2d 196 (2011). The Court went on to state that prohibiting lower Courts from looking at such evidence at resentencing "conflicts with longstanding principles of Federal Sentencing Law and contravenes Congress'

30

directives in §§ 366133 and 3553(a)." *Id.* at 493. Indeed, in *United States v. Hernandez*, the Second Circuit vacated the Judgment of a District Court Judge who failed to consider rehabilitation at resentencing. 604 F.3d 48, 55 (2d Cir. 2010). The Court stated that a failure to consider rehabilitation and mitigating evidence was essentially a "fai[lure] to consider Section 3553 (a) factors." See *Id.* The § 3553 (a) factors, therefore, not only allow a Court to look to rehabilitation but esentially mandate it as a guiding principle throughout the analysis.

In Summary, if Petitioner Escajeda had not received the enhancement abovementioned, or if he had not been found accountable for the whole drug amount of the conspiracy, which basically was based in ghost drug, he could have been scored with level 37, and Criminal History Category I, his guidelines range it could be: 210 to 262, for that reason, Petitioner is suggesting that his sentence could be lowered to 235 months imprisonment.

Under 18 U.S.C. § 3582(c)(2), to modify Escajeda's sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of time served, aligning with current sentencing norms for similar first-time controlled drugs conspiracy offender, is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a),

specifically deterrence, protection of the public, and respect for the law.

Accordingly, this motion should be granted.

## V. CONCLUSION

Petitioner Jose Rodolfo Escajeda Presents Extraordinary and Compelling reasons in support of Compassionate Release as envisioned by the passage of the First Step Act. A reduction in his sentence is consistent with U.S. Sentencing Policy and he poses NO DANGER to society. Moreover, Granting Compassionate Release would Not diminish the goals under § 3553(a).

For the foregoing reason, Escajeda prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, and re-sentence him to time service, or any other relief that the Court deems appropriate and just.

Respectfully submitted,

Dated: April 21, 2026

_Jose Rodolfo Escajeda_
JOSE RODOLFO ESCAJEDA
REG. NO. 69445-280
FCI THOMSON
FEDERAL CORR. INSTITUTION
PO BOX 1002
THOMSON, IL 61285
Appearing *Pro Se*

32

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2026, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 via U.S. Mail, postage prepaid, to Jose Luis Acosta, U.S. Attorney's Office, 700 E. San Antonio St., Suite 200, El Paso, TX 79901.

*Jose Rodolfo Escajeda*
JOSE RODOLFO ESCAJEDA

33







PRESS FIRMLY TO

PRIORITMAIL
MAIL
®

FILED

APR 24 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

estic use.

rance (restrictions apply).*

estic and many international dest

claration form is required.

garding claims exclusions see the

for availability and limitations of coverage

PE

To schedule free Packag
scan the QR cod

USPS.COM/PICK

tober 2023
2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.



**UNITED STATES POSTAL SERVICE®**  Click-N-Ship®

**P**

usps.com
$8.85
US POSTAGE

9405 5301 0935 5343 7824 79 0088 5000 0807 9901

U.S. POSTAGE PAID
Click-N-Ship®

04/21/2026
0 lb 9 oz

Mailed from 61285   207577184126717

PRIORITY MAIL®

REG. NO. 69445-280, FCI THOMSON, FEDERACL CORR. IN
JOSE R ESCAJEDA
PO BOX 1002
THOMSON IL 61285-1002

Created 2026-04-21
Flat Rate Envelope

RDC 03

C015

CLERK OF COURT, WESTERN DISTRICT OF T
RM 105
525 MAGOFFIN AVE
EL PASO TX 79901-2578

**USPS TRACKING #**

9405 5301 0935 5343 7824 79

